IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : |
| **Plaintiff** | : : : |
| vs. | : : : |
| THOMAS J. LAWLER and FREEDOM FOUNDATION USA LLC dba FREEDOM CLUB USA, | : : : : : |
| **Defendants,** | : : |
| DIVINE SPIRIT LLC, ORDER PROCESSING LLC, PROSPERITY SOLUTIONS LLC, and VIOLET BLESSINGS LLC, | : : : : : |
| **Relief Defendants.** | : : |

Civil Action File No.

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") files this complaint and alleges as follows:

## SUMMARY

1.      Since as early as 2004, Thomas J. Lawler ("Lawler") and his company, Freedom Foundation USA LLC dba Freedom Club USA ("Freedom Foundation") (collectively "defendants") have been offering and selling fictitious securities.  Specifically, defendants offer investors the opportunity to eliminate their debts and collect lucrative profits through the purchase of so called "administrative remedies" ("ARs")

2.      Defendants sell ARs in one thousand dollar increments, from $1,000 up to $10,000.  In addition to canceling the investor's debt, a $1,000 administrative remedy will supposedly return $325,000 and a $10,000 investment purportedly entitles the investor to receive $1 million when the AR is funded.

3.      Lawler has sold approximately 2,000 ARs over ten years and the offering is actively ongoing.  Not one investor in this scheme has received any of the promised returns.  But defendants continue to tell investors that funding of the ARs is "imminent."

4.      Defendants have engaged in acts and practices, and unless restrained and enjoined by this Court, will continue to engage in acts and practices which constitute and will constitute violations of Sections 5(a), 5(c) and

17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e(a), 77e(c) and §77q(a) ] Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## JURISDICTION AND VENUE

5.      The Commission brings this action pursuant to authority conferred upon it by Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d)-(e)] seeking to permanently enjoin the defendants from engaging in the transactions, acts, practices and courses of business alleged in this complaint, and transactions, acts, practices and courses of business of similar purport and object, for disgorgement of illegally obtained funds, and for other equitable relief, including civil money penalties.

6.      This Court has jurisdiction over this action pursuant to Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t and 77v] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

7.      Venue lies in this Court pursuant to Section 20(b) of the Securities Act [15 U.S.C. §§ 77t(b)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the transactions, acts, practices and courses of

business constituting violations of the Exchange Act and Securities Act occurred within the Northern District of Georgia. Among other things, Defendant Lawler resides in this district.

## DEFENDANTS AND RELIEF DEFENDANTS

8. Thomas J. Lawler, age 69, claims to be an ordained minister and refers to himself as Reverend Tom. He is the founder and manager of Freedom Foundation. He claims that a severe illness that struck one of his sons cost him his career and drove him into debt, at which point he began investigating the banking system and supposedly made the discoveries that underpin the story that he tells to prospective purchasers of the securities at issue in this matter.

9. Freedom Foundation USA LLC is a Nevada limited liability company created by Lawler.

10. Divine Spirit LLC ("Divine Spirit") is a Georgia limited liability company created by Lawler to pay the bills of Freedom Foundation. Typically, Lawler transfers money from the purchase of ARs to Divine Spirit, which writes checks or uses a debit card to pay the bills.

11. Order Processing LLC ("Order Processing") is a Missouri limited liability company with its principal place of business in Snellville, Georgia

created by Lawler to receive money for the purchase of ARs. Those who buy ARs are instructed to make their checks payable to Order Processing.

12. Prosperity Solutions LLC ("Prosperity Solutions") is a Georgia limited liability company created by a former Freedom Foundation employee. All Freedom Foundation payroll has been processed through Prosperity Solutions. Lawler would transfer a sufficient amount of money every two weeks, and the employee who created the LLC would then process the payroll.

13. Violet Blessings LLC ("Violet Blessings") is a limited liability company owned and controlled by Lawler's wife, Diane Lawler. The staff has documented a total of $55,000 transferred from Freedom Foundation to Violet Blessings.

## FACTS

**A.    The Investment Scheme**

14. Freedom Foundation, operated by Lawler, promises to turn $1,000 into at least $325,000. It accepts larger payments in increments of $1,000 up to $10,000, for which it promises $1 million.

15. Lawler uses the Freedom Foundation website, http://www.freedomclubusa.com, conference calls, and YouTube videos to

convince investors that Freedom Foundation can deliver on its fantastic promises. Lawler authored the Freedom Foundation website.

16. To attract investors, defendants represent that an account is established for each person at their birth in their name. This account is sufficient to fund all future borrowing by that individual. Where, by whom, and in what amount the supposed account is established are details that defendants do not disclose.

17. According to defendants, when people later borrow from a bank, they are not borrowing the bank's money nor its depositor's money, but rather that person's own money that resides in their own account. In an act of rank injustice, says Lawler, banks charge people interest on the use of their own money.

18. Freedom Foundation and Lawler offer people a way to correct this injustice, eliminate the supposed indebtedness they have incurred to creditors, and secure the promised payouts.

19. To all who believe this story, Lawler offers a solution: the above-mentioned AR. The AR is described as a "unique" and "proprietary" process through which Lawler and/or his staff prepare a series of three

notices to a creditor identified by the AR purchaser.  Investors need do nothing but supply the funds.

20.     Lawler represents that, by operation of the Uniform Commercial Code and international admiralty law, these notices cancel the AR purchaser's debt to that creditor.  The AR then enters what Lawler calls the "payment cycle," in which all AR purchasers await a series of unspecified international events ─ including a papal decree ─ which will trigger a massive payment from the U.S. Treasury to Freedom Foundation for at least the amount of all ARs.

21.     Defendants claim that that they have "worked with government and financial system[s] to establish high level of access to process loans."

22.     Upon information and belief, defendants have sold approximately 2,000 ARs since the offering of these investments began in 2004, at prices ranging from $1,000 to $10,000.

23.     Lawler sold an AR as recently as June, 2014.

24.     Defendants employ a sales force to keep AR sales flowing.  Lawler calls his salespeople "Ambassadors," trains them and pays them a 25 percent commission on AR sales.  To date, all AR sales have been through Ambassadors.

25.    Lawler uses some of the proceeds from AR sales to to motivate the Ambassadors with 25 percent commissions, to pay for phone service, for website design and maintenance, for payroll, for postage, for rent, and for other business expenses.

26.    Lawler also uses AR sales to fund certain personal expenses. Specifically, he has spent funds from AR sales on chiropractor visits, expensive powder with supposed powers of rejuvenation (marketed by a company that sells super-oxygenated water), and at least one beach vacation.

27.    Lawler also paid at least $55,000 of AR sales proceeds to an LLC controlled by his wife, Violet Blessings LLC, in supposed consideration for work done for Freedom Foundation, although Mrs. Lawler denies giving consideration for the money.

28.    Lawler transferred at least some money from AR purchasers overseas to New Zealand, to an account controlled by an employee of Freedom Foundation.

29.    Lawler has also used several limited liability companies to handle discrete parts of his scheme.  At various times, there have been bank accounts in at least three of these LLCs names, Order Processing, Prosperity

Solutions, and Divine Spirit and each of those three entities received some investor funds.

**B.     Defendants' Misrepresentations and Omissions**

30.    Defendants misrepresent that their story about the U.S. banking system is true.  They tell prospective purchasers that they owe their creditors nothing, and that the purchase of an AR can establish the fact legally.

31.    Defendants tell investors that they can expect to receive $325,000 for the purchase of a $1,000 AR, and $1 million for the purchase of a $10,000 AR.

32.    Even though no investor has received their promised returns since the offering began approximately 10 years ago, defendants continue to tell investors that the funding of the ARs is imminent.  Lawler has told some investors that certain events need to unfold to unlock the riches and begin the flow of cash.

33.    After receiving a subpoena to testify before the staff of the Commission, Lawler added a statement on the Freedom Foundation website that Freedom Foundation was not under investigation by any government agency.   Lawler removed that misrepresentation after his testimony.

34. Defendants recently added an offering designed to bring in more revenue. Specifically, the "maintenance program" promises a $10,000 bonus "at funding" for anyone who pays $300 per year or $30 per month.

35. Defendants have also recently launched a new entity called Golden Ray LLC, which they describe as an entity designed to bring the benefits of ARs to organizations.

## COUNT I—UNREGISTERED OFFERING OF SECURITIES

### Violations of Sections 5(a) and 5(c) of the Securities Act
### [15 U.S.C. § 77e(a) and 77e(c)]

36. Paragraphs 1 through 35 are hereby realleged and are incorporated herein by reference.

37. No registration statement has been filed or is in effect with the Commission pursuant to the Securities Act and no exemption from registration exists with respect to the transactions described herein.

38. Since as early as 2004 through the present, defendants singly and in concert, have:

    (a) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b) carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and

(c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy securities, through the use or medium of any prospectus or otherwise, without a registration statement having been filed with the Commission as to such securities.

39. By reason of the foregoing, defendants, directly and indirectly, singly and in concert, have violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II—FRAUD

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

40. Paragraphs 1 through 35 are hereby realleged and are incorporated herein by reference.

41. Since as early as 2004 through the present, defendants, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes and

11

artifices to defraud purchasers of such securities, all as more particularly described above.

42. Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes, and artifices to defraud.

43. While engaging in the course of conduct described above, the defendants acted with scienter, that is, with an intent to deceive, manipulate, or defraud or with a severely reckless disregard for the truth.

44. By reason of the foregoing, defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III—FRAUD

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act[15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

45. Paragraphs 1 through 35 are hereby realleged and are incorporated herein by reference.

46. Since as early as 2004 through the present, defendants, in the offer and sale of the securities described herein, by use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly:

(a) obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(b) engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities.

47. By reason of the foregoing, the defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## **COUNT IV--FRAUD**

**Violations of Section 10(b) of the Exchange Act, 15 U.S.C. 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, Thereunder**

48. Paragraphs 1 through 35 are hereby realleged and are incorporated herein by reference.

49. Defendants, in connection with the purchase of securities described herein, by the use of the means or instrumentalities of interstate commerce or by use of the mails, or of any facility of any national securities exchange, directly and indirectly:

  (a) employed devices, schemes, and artifices to defraud;

  (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

  (c) engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon other persons,

as more particularly described above.

50. Defendants, knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, defendants acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

51. By reason of the foregoing, defendants directly and indirectly violated, and unless permanently restrained and enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Commission respectfully prays that the Court:

## I.

Make findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, finding that the defendants named herein committed the violations alleged herein.

## II.

Enter a temporary restraining order, and preliminary and permanent injunctions enjoining the defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order of injunction, by personal service or otherwise, and each of them, from violating, directly or indirectly Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

III.

Enter an order requiring an accounting of the use of proceeds of the sales of the securities described in this complaint and the disgorgement of all ill-gotten gains or unjust enrichment with prejudgment interest, to effect the remedial purposes of the federal securities laws, and an order freezing the assets, preserving documents of the defendants, expediting discovery to preserve the status quo, and an order requiring defendants and relief defendants to repatriate any investor funds transferred overseas.

IV.

An order imposing a constructive trust and requiring disgorgement by the relief defendants of all sums by which they have been unjustly enriched

V.

An order pursuant to Section 20(d) of the Securities Act [15 U.S.C. 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. 78u(d)(3)] imposing civil penalties against defendants.

VI.

Such other and further relief as this Court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

Dated: July 31, 2014

RESPECTFULLY SUBMITTED,

/s/  Pat Huddleston

M. Graham Loomis
Regional Trial Counsel
Georgia Bar No. 457868
Email:  loomism@sec.gov
404-842-7622

Pat Huddleston
Senior Trial Counsel
Georgia Bar No. 373984
Email:  huddlestonp@sec.gov
404-842-7616

COUNSELS FOR PLAINTIFF
U. S. SECURITIES AND EXCHANGE COMMISSION
950 East Paces Ferry Road, Suite 900
Atlanta, Georgia 30326